UNITED STATES of America, Plaintiff–Appellee,

v.

Andrew Lee YOUNG, Defendant–Appellant.

No. 92–50144.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 2, 1993 *.

Decided March 31, 1993.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Amy M. Karlin, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Steven J. Katzman, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WALLACE, Chief Judge, SNEED and CYNTHIA HOLCOMB HALL, Circuit Judges.

WALLACE, Chief Judge:

Young appeals from his sentence following his guilty plea to unarmed bank robbery, in violation of 18 U.S.C. § 2113(a). He contends that the district court erred by sentencing him as a career criminal offender pursuant to section 4B1.1 of the United States Sentencing Guidelines (Guidelines). This appeal presents the sole issue of whether, for purposes of section 4B1.1, the unlawful possession of a deadly weapon while in jail, in violation of California Penal Code § 4574(a), is a "crime of violence." The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We affirm.

I

Section 4B1.1 of the Guidelines provides for an increased sentence to be imposed upon career criminal offenders. A defendant can qualify as a career offender if he or she is convicted of a felony that is a crime of violence and has two prior felony convictions for crimes of violence. U.S.S.G. § 4B1.1; *United States v. Huffhines*, 967 F.2d 314, 320 (9th Cir.1992) (*Huffhines*).

The district court sentenced Young as a career offender based on his instant conviction for unarmed bank robbery and on two prior state felony convictions. One of the prior convictions was for voluntary manslaughter; the other was for possession of a deadly weapon in prison. Young concedes that his instant conviction and his conviction for voluntary manslaughter may

be counted for purposes of section 4B1.1. He challenges only the reliance on his prior conviction for possession of a deadly weapon while in prison, which he contends is not a crime of violence. The district court disagreed and sentenced Young as a career criminal offender.

## II

■ We review the district court's interpretation of the Guidelines de novo. *Huffhines,* 967 F.2d at 320. A "crime of violence" is defined in part in Guidelines section 4B1.2 as a state or federal offense punishable by more than one year in prison that either "has as an element the use, attempted use, or threatened use of physical force against the person of another, or ... otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1). To determine whether a prior conviction is a "crime of violence," we look to "the elements of the crime charged or whether the actual charged 'conduct' of the defendant presented a serious risk of physical injury to another." *United States v. Sahakian,* 965 F.2d 740, 742 (9th Cir.1992) (*Sahakian*).

■ The elements of the offense of possession of a deadly weapon in prison are established by California Penal Code § 4574(a), the statute under which Young was convicted. Those elements are: "(1) possession (2) of a firearm, deadly weapon, or explosive, (3) without authorization, (4) by one lawfully committed to a county jail." *People v. Talkington,* 140 Cal. App.3d 557, 561, 189 Cal.Rptr. 735 (1983). An intent to use the object in a violent manner is not a required element of the offense. *Id.* Clearly, then, the statutory definition of the crime does not contain as an element "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(1)(i).

We turn, then, to the question whether the offense "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii). Young argues that our prior cases establish that only the statutory elements of the offense may be examined to determine whether a particular offense is a crime of violence. Thus, he asserts, we must follow our case law even though it conflicts with the Guidelines, which do permit consideration of a defendant's conduct while our cases do not.

■ As is clear from *Sahakian,* in determining whether a particular conviction involved a "crime of violence," we make two different inquiries. 965 F.2d at 742. First, we look to the elements of the crime charged. If one of the elements of the crime is the use, attempted use, or threatened use of physical force, we consider that crime to be one of violence. *Id.* If the crime does not contain such an element, we examine "whether *the actual charged 'conduct' of the defendant* presented a serious risk of physical injury to another." *Id.* (emphasis added). The second inquiry plainly directs our attention to the conduct for which the defendant was charged and convicted. This inquiry is consistent with the directive contained in the Guidelines, which instructs courts to consider "the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted," to determine whether that conduct "by its nature[ ] presented a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2, comment. (n. 2).

In *Huffhines,* decided after *Sahakian,* we stated that a "categorical approach, by which only the statutory definition of the crime is examined, is *appropriate* to determine whether a prior conviction is a crime of violence under section 4B1.1." 967 F.2d at 320 (emphasis added). Young urges us to read this passage as precluding any examination of a defendant's actual conduct. We need not do so. While a consideration of only the statutory definition of a crime may be sufficient in some cases to show the crime is one of violence, in others the actual conduct with which the defendant was charged may need to be examined. In *Huffhines* itself, for example, we held that the unlawful possession of a silencer was a crime of violence because it involved conduct that presented a "risk of improper physical force." 967 F.2d at 321.

■ To dispel any lingering confusion, we hold explicitly what is implicit in our

cases: In determining whether an offense "involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(1)(ii), courts may consider the statutory definition of the crime and may also consider the conduct "expressly charged[ ] in the count of which the defendant was convicted." U.S.S.G. § 4B1.2, comment. (n. 2). If a prior conviction is determined to be a crime of violence under either prong of this inquiry, then it is to be counted under U.S.S.G. § 4B1.1, regardless of the outcome of the other prong. The latter inquiry, however, must be limited to the conduct charged in the indictment or information; a sentencing court is not free to make a "wideranging inquiry into the specific circumstances surrounding a conviction." *United States v. Johnson,* 953 F.2d 110, 113 (4th Cir.1992). The "sentencing court must confine its factual inquiry to those facts charged" in the count of the indictment or information for which the defendant was convicted. *Id.*

■ Young was charged with possession of a deadly weapon in prison. The information charged him with possessing a "shank," in his case a melted-down shaving razor. Young argues that the crime of possessing a deadly weapon in prison is similar to the crime of unlawful possession of a firearm by a felon. The latter is not considered "a crime of violence" for purposes of determining whether a defendant is a career criminal offender. U.S.S.G. § 4B1.2, comment. (n. 2); *see also Sahakian,* 965 F.2d at 742 (concluding that "conviction of being a felon in possession [of a firearm] is not a conviction of a crime of violence"). Thus, Young argues, the possession of a deadly weapon in prison likewise should not be considered a crime of violence.

These two offenses are not sufficiently similar to warrant similar consideration for the purposes of determining a defendant's status as a career criminal offender. Whether we confine our inquiry to the statutory definition of the crime, the possession of a deadly weapon in jail, or consider the specific conduct charged, the possession of a "shank" in jail, our conclusion is the same. In a prison setting, the possession by an inmate of a deadly weapon indeed presents a serious potential risk of physical injury to another.

The felon who unlawfully possesses a firearm, although disobeying the law, may have a legitimate use intended for the firearm, such as target shooting or collecting. By contrast, we fail to discover a similarly "innocent" purpose behind the possession of a deadly weapon by a prison inmate. *Cf. Huffhines,* 967 F.2d at 321 (observing that "a silencer is practically of no use except for a criminal purpose"). The confines of prison preclude any recreational uses for a deadly weapon and render its possession a serious threat to the safety of others. By its nature, therefore, the possession of a deadly weapon by a prison inmate presents "a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii).

The district court did not err in relying on Young's conviction for possession of a deadly weapon in prison when determining his status as a career criminal offender.

AFFIRMED.