**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

PATRICK J. MITCHELL, AKA Pep,
        *Defendant-Appellant.*

No. 08-50429

D.C. No.
2:07-cr-00474-
GAF-1

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
January 11, 2010—Pasadena, California

Filed October 20, 2010

Before: Alfred T. Goodwin, William C. Canby, Jr. and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge Goodwin;
Concurrence by Judge O'Scannlain

17303

## COUNSEL

Gary P. Burcham, Burcham & Zugman, San Diego, California, for the defendant-appellant.

Jean-Claude Andre, Assistant United States Attorney, Criminal Appeals Division, Los Angeles, California, for the plaintiff-appellee.

## OPINION

GOODWIN, Senior Circuit Judge:

Patrick J. Mitchell appeals his 180-month imprisonment sentence as a career offender under § 4B1.1 of the United States Sentencing Guidelines following his guilty plea to distributing 52.4 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii). We affirm and join other circuits that have clarified that, even in cases where a defendant is being sentenced under the Guidelines as a career offender, the sentencing court may depart downward to account for the disparity between treatment of crack cocaine and powder cocaine in the Guidelines.

### FACTUAL AND PROCEDURAL BACKGROUND

The Federal Bureau of Investigation ("FBI") and the Los Angeles Police Department had identified Mitchell as a member of the Black P-Stone Bloods street gang and a supplier of crack cocaine. On May 23, 2005, an FBI confidential informant purchased two ounces of crack cocaine from Mitchell for $1,000. Forensic analysis showed that the plastic bag Mitchell sold to the informant contained 52.4 grams of crack cocaine.

Pursuant to a plea agreement, Mitchell pled guilty to a single-count information charging him with distributing a

mixture containing 52.4 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii). This crime requires a mandatory minimum of 10 years of imprisonment. *Id.* § 841(b)(1)(A)(iii). Because Mitchell pled guilty pre-indictment, the government agreed not to use his prior felony narcotics convictions to enhance his mandatory minimum sentence under 21 U.S.C. §§ 802(44), 841, 851 and to recommend that he be sentenced at the low end of the Sentencing Guidelines range. Nonetheless, the parties acknowledged that the crime to which Mitchell was pleading guilty was a felony narcotics trafficking crime, and that his criminal history could subject him to an enhanced Guidelines range as a career offender.

Concluding that Mitchell had four predicate state felony convictions, the Probation Office calculated his offense level as a career offender under § 4B1.1(b) of the U.S. Sentencing Guidelines. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1(b) (2007) (amended May 1, 2008).[1] Following objections to and revisions of Mitchell's presentence report ("PSR"), the district judge conducted a sentencing hearing on September 22, 2008. The judge determined that the four felony convictions all constituted predicates for Mitchell's career-offender status, although only two were required. The judge then considered the 18 U.S.C. § 3553(a) factors and concluded: "Mitchell's record is lengthy. He has had virtually no periods in his life that were truly crime free."

Mitchell's Sentencing Guidelines range was 262-327 months of imprisonment. Regarding the incarceration portion of Mitchell's sentence, the district judge explained that "the

---

[1]Mitchell's four prior state felony convictions were: (1) a 1989 conviction for possession of cocaine for sale, in violation of Cal. Health & Safety Code § 11351.5; (2) a 1991 conviction for first-degree burglary, in violation of Cal. Penal Code § 459; (3) a 1994 conviction for possession of a weapon in jail, in violation of Cal. Penal Code § 4574(a); (4) a 1997 conviction for making a terrorist threat, in violation of Cal. Penal Code § 422.

single most important variable in my exercise of discretion, which is going to result in a sentence below the government's recommendation, is the crack powder differential." Noting that the disparity was "enormous" and "disproportionate," the judge determined that "it requires some exercise of discretion and judgment, but there are limitations." The judge stated that Mitchell's "lengthy serious criminal history," including "violence," "threats of violence," and "drug dealing" necessitated "protecting the public" and required "a substantial sentence." Although the statutory minimum was 10 years, 21 U.S.C. § 841(b)(1)(A), which Mitchell had requested, the judge stated that a sentence of 120 months was "too great an adjustment . . . the adjustment downward should [not] go that far."

From the low end of Mitchell's Sentencing Guidelines range, 262 months, the judge departed downward 43 months on the basis of the crack/powder cocaine disparity and credited Mitchell for 39 months served in state custody on a related crime. Consequently, the district judge sentenced Mitchell to 180 months of imprisonment, followed by 5 years of supervised release, and ordered him to pay a $100 special assessment. Mitchell is in custody serving his 180-month sentence. He challenges his predicate state convictions that were used to qualify him for career-offender status under the Sentencing Guidelines and the district judge's consideration of the crack/powder disparity in his sentence.

## DISCUSSION

I. *Prior State Felony Convictions Qualifying as Predicates for Sentencing Guidelines, Career-Offender Status*

[1] We review de novo a district court's "interpretation of the Sentencing Guidelines and its determination that a defendant qualifies as a career offender" under U.S.S.G. § 4B1.1. *United States v. Crawford*, 520 F.3d 1072, 1077 (9th Cir. 2008). To qualify as a career offender, the defendant must be (1) at least 18 at the time he committed the subject crime of

conviction, which must be (2) "a felony that is either a crime of violence or a controlled substance offense," and (3) the defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Only the third requirement is at issue in this appeal.

[2] Mitchell concedes that, under *Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 717-18 (9th Cir. 2003), his 1997 conviction under Cal. Penal Code § 422 for making a terrorist threat is a crime of violence. Appellant's Br. at 15. Therefore, Mitchell's career-offender status is substantiated under the Sentencing Guidelines as long as one of his three other prior state convictions is an appropriate predicate.

[3] Mitchell's 1994 conviction for possession of a weapon in jail also is a crime of violence. *United States v. Young*, 990 F.2d 469 (9th Cir. 1993). *Young* held that "[i]n determining whether an offense 'involves conduct that presents a serious potential risk of physical injury to another,' U.S.S.G. § 4B1.2(1)(ii), courts may consider the statutory definition of the crime and may also consider the conduct 'expressly charged[ ] in the count of which the defendant was convicted,' U.S.S.G. § 4B1.2, comment. (n.2)," although either component is sufficient. 990 F.2d at 472. Therefore, Young's possession of a shank in jail, in violation of Cal. Penal Code § 4574(a), created a viable risk that a person might be injured, which made it a crime of violence under the statutory definition.[2] Like the *Young* defendant, Mitchell violated § 4574(a) by pos-

---

[2]The Young panel recognized:

Whether we confine our inquiry to the statutory definition of the crime, the possession of a deadly weapon in jail, or consider the specific conduct charged, the possession of a 'shank' in jail, our conclusion is the same. In a prison setting, the possession by an inmate of a deadly weapon indeed presents a serious potential of physical injury to another.

990 F.2d at 472.

sessing a shank in jail, which was a qualifying predicate conviction.

**[4]** Mitchell's 1989 conviction for possession of cocaine for sale, in violation of Cal. Health & Safety Code § 11351.5, is a controlled-substance crime. This court has held that

> [a] prior conviction under § 11351.5 categorically constitutes a controlled substance offense for the purposes of § 4B1.1 because (1) it is an offense under state law, (2) that is punishable by imprisonment for a term exceeding one year, and (3) that prohibits the distribution or dispensing of a controlled substance or the possession of a controlled substance with intent to distribute or dispense.

*United States v. Charles*, 581 F.3d 927, 934 (9th Cir. 2009). This state controlled-substance felony was an additional qualifying predicate conviction.

**[5]** Mitchell "d[id] not challenge" the Probation Office's determination that his 1991 prior conviction for first-degree burglary under Cal. Penal Code § 459 "qualifies as a career offender predicate." The district judge determined Mitchell's 1991 first-degree burglary conviction to be a career-offender predicate because Mitchell "concedes the first-degree burglary conviction does count." Whether a conviction under § 459 is a crime of violence is a question currently pending in this circuit.[3] Because Mitchell had three other qualifying predicate convictions, and the Guidelines require only two to support his career-offender sentencing status, he properly

---

[3]After Mitchell's sentencing, this court held that conviction under § 459 of "first degree residential burglary is not a prior conviction of a crime of violence" under the Guidelines. *United States v. Aguila-Montes*, 553 F.3d 1229, 1234 (9th Cir. 2009). *Aquila-Montes*, however, is being reconsidered en banc and is no longer valid precedent in this circuit. 594 F.3d 1080 (9th Cir. 2010).

could be sentenced as a career offender, which was recognized in his plea agreement.

## II. *Consideration of the Crack/Powder Disparity on a Career-Offender Sentence*

Although Mitchell's career-offender, Sentencing Guidelines range was 262-327 months of imprisonment, the district judge departed downward from the low end by 43 months because of his policy disagreement with the crack/powder sentencing disparity. Until recently, some courts had held that, even though judges were free to depart downward from ordinary sentences to account for crack/powder sentencing disparity, they could not do so when the defendant was being sentenced as a career offender because Congress had mandated that career offender sentences should be "at or near the maximum term," 28 U.S.C. § 994(h). *See, e.g., United States v. Welton*, 583 F.3d 494, 496 (7th Cir. 2009).

In line with such cases, the government originally argued here that the district court had no power to depart downward as it did. By subsequent letter, however, the government noted that it had retreated from that position, with the consequence that more recent cases had recognized the ability of sentencing courts to depart downward because of the crack/powder disparity even in career-offender cases. *See*, *e.g.*, *United States v. Corner*, 598 F.3d 411 (7th Cir. 2009) (en banc). For reasons that follow, we agree with *Corner* and uphold the departure.

**[6]** In a sequential trilogy of relevant cases, the Supreme Court has been consistent in explaining how sentencing judges are to use the Sentencing Guidelines in formulating a convicted defendant's sentence. *United States v. Booker*, 543 U.S. 220, 245 (2005); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Spears v. United States*, 129 S. Ct. 840, 843 (2009) (per curiam). The Court has held that the Sentencing Guidelines are advisory and that sentencing judges may vary, pro-

vided that they adhere to statutory requirements. *Booker*, 543 U.S. 220. Because the 100-to-1 crack/powder ratio in U.S.S.G. § 2D1.1(c) was derived from 21 U.S.C. § 841, sentencing judges considered this to be a statute-based requirement from which they could not deviate. The Court subsequently instructed that sentencing judges may consider a defendant's individual circumstances, including whether the crack/powder disparity "yields a sentence greater than necessary to achieve § 3553(a)'s purposes, even in a mine-run case."[4] *Kimbrough*, 552 U.S. at 109 (internal quotation marks omitted). Because the crack/powder ratio in the Sentencing Guidelines was the decision of the Sentencing Commission and not Congress, *Kimbrough* permitted sentencing judges to tailor a sentence under § 3553(a) according to their assessment of an individual defendant. *Id.* at 102-04, 110*; see also United States v. Rodriguez*, 527 F.3d 221, 231 (1st Cir. 2008) (recognizing that "*Kimbrough* makes manifest that sentencing courts possess sufficient discretion under section 3553(a) to consider requests for variant sentences premised on disagreements with the manner in which the sentencing guidelines operate").

When application of *Kimbrough* resulted in sentencing judges varying from the Sentencing Guidelines crack/powder ratio only when use of that ratio rendered an inappropriate sentence, the Supreme Court further clarified that "the point of *Kimbrough*" was "a recognition of district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, 129 S. Ct. 840, 843 (2009) (per curiam). Under the analyses of *Kimbrough* and *Spears*, the reference in the career-offender Guidelines, U.S.S.G. § 4B1.1, to 28 U.S.C. § 994(h) that sentences for career offenders be " 'at or near' the statutory maximum" is

---

[4]The Sentencing Commission reduced the ratio in 2007 by Amendment 706. Amendments to the Sentencing Guidelines for United States Courts, 72 Fed.Reg. 28571-28572 (2007).

a directive to the Sentencing Commission and not to sentencing courts, which are free to vary where appropriate in an individual case. *Kimbrough*, 552 U.S. at 103 (quoting 28 U.S.C. § 994(h)).

[7] In *Spears*, the Court stressed that the crux of *Kimbrough* is the recognition of "district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." 129 S. Ct. at 843. That is, the crack/powder Guidelines and the career-offender Guideline, like all other Guidelines, are advisory and Guidelines with which a sentencing judge is empowered to disagree, when the circumstances in an individual case warrant. Acceding to the Court's confirmation of the *advisory only* use of the Sentencing Guidelines, the circuits that recently have addressed the crack/powder differential in sentencing a career offender have concluded that "district judges are at liberty to reject *any* Guideline on policy grounds—though they must act reasonably when using that power." *United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (en banc) (vacating sentence in crack/powder disparity, career-offender case and overruling prior precedent); *see United States v. Michael*, 576 F.3d 323, 327-28 (6th Cir. 2009); *United States v. Boardman*, 528 F.3d 86, 87-88 (1st Cir. 2008); *United States v. Sanchez*, 517 F.3d 651, 664-65 (2d Cir. 2008).[5] We agree with this analysis and now follow it in this circuit.

---

[5]*See also United States v. Vasquez*, 558 F.3d 1224 (11th Cir. 2009), *vacated* 130 S. Ct. 1135 (2010) (remanding for reconsideration "in light of the position asserted by the Solicitor General in her brief for the United States filed on November 16, 2009," which rejects the premise that a sentencing judge lacks authority to deviate from the advisory Sentencing Guidelines range when crack/powder disparity is involved in sentencing a career offender). As Chief Judge Easterbrook states in *Corner*, in vacating *Vasquez* for reconsideration under the analysis advanced by the Solicitor General, the Supreme Court unanimously "indicates receptivity" to those views sufficient to induce the Seventh Circuit to adopt them en banc and to overrule former precedent. 598 F.3d at 414.

On appeal, we review a sentence for abuse of discretion as to reasonableness. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Our reasonableness review consists of two parts: (1) procedural error and (2) substantive reasonableness. *Id.* There is no issue in this case regarding the correct calculation of Mitchell's Guidelines sentence, consideration of the § 3553(a) factors and the advisory nature of the Guidelines, or failure to explain the sentence, which would show procedural error. *Id.*

[8] Therefore, our review is solely for substantive reasonableness of Mitchell's sentence. We consider the totality of the circumstances, which includes the degree of variance from the Guidelines sentencing range, and accord deference to the sentencing judge's decision that the § 3553(a) factors substantiate departure from the Guidelines sentencing range. *Id.* Reversal is not justified simply "because we think a different sentence is appropriate." *Id.*

We have determined that the sentencing judge correctly decided that Mitchell was a career offender under the Guidelines with at least two qualifying predicate state felonies. Mitchell contends that the sentencing judge should have eliminated the crack/powder disparity and sentenced him under the 151-188-month range, as if he had sold 52.4 grams of powder cocaine instead of crack.[6] In exercising his sentencing discretion, the judge specified that the most important variable was the disproportionality of the crack/powder differential. The judge explained that the statutory minimum requested by Mitchell of 10 years was an excessive downward adjustment. Although Mitchell's Guidelines sentencing range

---

[6]Mitchell's trafficking of 52.4 grams of crack cocaine resulted in a statutory maximum of life imprisonment with a corresponding career-offender, base-offense level of 37. 21 U.S.C. § 841(b)(1)(A)(iii); U.S.S.G. § 4B1.1(b)(A). If he had trafficked 52.4 grams of powder cocaine, then his statutory maximum would have been 20 years of imprisonment with a career-offender, base-offense level of 32. 21 U.S.C. § 841(b)(1)(B)(iii); U.S.S.G. § 4B1.1(b)(C).

was 262-327 months of imprisonment, the judge used the lower end and the § 3553(a) factors to adjust Mitchell's sentence downward to 180 months, including credit for his 39-month state imprisonment term in a related case.

**[9]** In sentencing Mitchell, the judge explained his disagreement with the Sentencing Commission's underlying policy decision of incorporating the crack/powder disparity in the Sentencing Guidelines and allowed for it in departing downward in Mitchell's sentence. The judge similarly disagreed with the Sentencing Commission's Guideline that a career offender's sentence must be at or near the statutory maximum sentence pursuant to 28 U.S.C. § 994(h). As the Supreme Court through *Booker*, *Kimbrough*, and *Spears* has instructed, and as other circuits that have confronted the crack/powder variance in the sentence of a career offender have accepted and clarified in their circuit law, sentencing judges can reject *any* Sentencing Guideline, provided that the sentence imposed is reasonable. "No judge is *required* to sentence at a variance with a Guideline, but every judge is at liberty to do so." *Corner*, 598 F.3d at 416. Because the sentencing judge carefully considered and explained his downward adjustment of Mitchell's imprisonment term to account for the crack/powder differential, even though Mitchell was a serial offender, the judge was entitled to disagree with the policy behind the advisory Sentencing Guidelines and did not abuse his discretion in sentencing Mitchell.

## CONCLUSION

Mitchell has appealed his 180-month sentence for pleading guilty to distributing 52.4 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), as a career offender. The sentencing judge appropriately explained the downward departure in Mitchell's Guidelines sentencing range because of his disagreement with the crack/powder disparity, despite Mitchell's being a career offender. We AFFIRM.

O'SCANNLAIN, Circuit Judge, concurring:

I join the court's opinion in full. I write separately only to emphasize that our decision does not determine the standard of review applicable to a claim that a district court has varied too greatly from the advisory Guidelines range sentence based on a policy disagreement with the Sentencing Guidelines.

Although we review all sentencing decisions for abuse of discretion, *Gall v. United States*, 552 U.S. 38, 41 (2007), the Supreme Court has stated that "closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect [18 U.S.C.] § 3553(a) considerations even in a mine-run case," *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). The Court has not resolved the precise nature of this "closer review," and the circuits have avoided staking out clear positions on this matter. *See, e.g.*, *United States v. Engle*, 592 F.3d 495, 502-03 (4th Cir. 2010) (remanding for the district court to develop a more complete record to permit such "closer review" of its decision on appeal).

We have not yet had occasion to assess the nature of this "closer review," and we have not done so here. Although such review may be appropriate where a party claims that a district court has imposed a sentence that varied too greatly from an advisory Guidelines range sentence, this appeal presents no such claim. The government did not bring a cross-appeal to challenge Mitchell's below Guidelines range sentence as substantively unreasonable. Our opinion thus considers only Mitchell's claim that his sentence was substantively unreasonable because the district court failed to eliminate entirely the crack/powder disparity, and does not consider what standard of review might have applied had the government challenged the substantive reasonableness of Mitchell's sentence.