*215 OWEN, Circuit Judge:
Francisco Javier Marquez contends that his prior conviction for possession of a deadly weapon by a prisoner is not a crime of violence within the meaning of section 4B1.2(a)(2) of the Sentencing Guidelines[1] and therefore that the district court erred in sentencing him as a career offender under section 4B1.1.[2] We affirm.
I
Marquez pled guilty to possessing more than 100 kilograms of marijuana vyith the intent to distribute it. The presentence report recommended that the district court sentence Marquez under the career-offender guidelines based on Marquez’s pri- or New Mexico convictions for possession of cocaine with the intent to distribute and possession of a deadly weapon by a prisoner. Only the latter conviction is at issue in this appeal. The New Mexico statute under which Marquez was convicted provides that “[possession of [a] deadly weapon or explosive by [a] prisoner in lawful custody” is a second degree felony.[3] His indictment charged him under this statute, alleging that he “possessed] a deadly weapon, a club[,] contrary to Section 30-22-16, NMSA 1978,” while an “inmate of the Bernalillo County Detention Center.” A deadly weapon is defined under applicable New Mexico law as “any weapon which is capable of producing death or great bodily harm,” and great bodily harm “means an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body.”[4]
Marquez objected to the presentence report, arguing that his offense of possession of a deadly weapon by a prisoner was not a crime of violence in light of the Supreme Court’s decision in Begay v. United, States.[5] Marquez contends that his prior conviction is not for an offense that “is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.”[6] He argues that his properly calculated Guidelines’ sentencing range is 92 to 155 months of imprisonment. The district court determined that the career-offender enhancement applied and overruled the objection. The court concluded that the advisory Guidelines’ range was 188 to 235 months of imprisonment and sentenced Marquez to 188 months’ imprisonment. This appeal followed.
II
We review the district court’s interpretation of the Sentencing Guidelines de novo.[7] A defendant may be sentenced as a career offender under the Guidelines if “the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense” and the defendant “has at least two prior felony convictions of either a crime of violence or a controlled substance offense.”[8] The term *216 “crime of violence” is defined in section 4B1.2 as
any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that — ■
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[9]
The parties agree that we are concerned only with what is sometimes called “the residual clause” of section 4B1.2(a)(2),[10] and therefore, we must determine whether Marquez’s conviction under New Mexico law “otherwise involves conduct that presents a serious potential risk of physical injury to another.” We do not write on a clean slate, and we begin with the context in which we must consider the answer to this question.
The comments to section 4B1.1 of the Guidelines reflect that sections 4B1.1 and 4B1.2, embodying the career offender guidelines, were promulgated to implement the directive in 28 U.S.C. § 994(h), which “mandates that the Commission assure that certain ‘career’ offenders receive a sentence of imprisonment ‘at or near the maximum term authorized.’ ”[11] The term “crime of violence” is not defined in § 994(h); however, 18 U.S.C. § 16 does define that term.[12] The comments to section 4B1.1 explain that the Commission implemented the directive in § 994(h) by “tracking in large part the criteria set forth in 28 U.S.C. § 994(h),” but that “the Commission has modified this definition in several respects to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and to avoid ‘unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct.’ ”[13]
The black letter text of the definition of “crime of violence” in section 4B1.2 of the Guidelines is very similar to the definition of “violent felony” in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B).[14] Within subsections (1) *217 and (2), the only difference is that the Guidelines have inserted “of a dwelling” after “burglary.”[15] However, the application notes to section 4B1.2 of the Guidelines gives further guidance to how the term “crime of violence” is to be applied, including additional enumerated offenses not included in the ACCA and an elaboration regarding the residual clause:
“Crime of violence” includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as “crimes of violence” if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.[16]
The commentary to section 4B1.2 expressly provides that possession of a firearm by a felon is not a crime of violence unless the weapon is “a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun.”[17] Marquez’s prior conviction was not, however, for being a felon in possession of a firearm. He was convicted under state law for possession of a deadly weapon by an inmate, which is similar to the federal offense defined in 18 U.S.C. § 1791, prohibiting an inmate’s possession of “a weapon (other than a firearm or destructive device), or an object that is designed or intended to be used as a weapon or to facilitate escape from a prison.”[18]
Our construction of the career-offender Guideline sections are further informed by two decisions of the Supreme Court construing the ACCA.[19] Although the text of the ACCA defining “violent felony” and the Guidelines definition and commentary regarding a “crime of violence” are not identical, as discussed above, our court as well as other circuit courts have concluded that the Supreme Court’s decisions interpreting the meaning of “violent felony” under the ACCA are at least instructive.[20] In Begay, the Court held that driving under the influence of alcohol was not a “violent felony” within the meaning of the *218 ACCA.[21] In Chambers, the Court held that a “failure to report” for penal confinement was not a violent felony under the ACCA.[22] Prior to the issuance of these decisions, our court had held that the knowing possession of a deadly weapon in a penal institution is a crime of violence under U.S.S.G. § 4B1.2(a)(2).[23] Marquez contends that our construction of section 4B1.2 was erroneous in light of Begay.
We therefore begin our analysis with a consideration of the Supreme Court’s reasoning in Begay and its subsequent decision in Chambers. The Court concluded in Begay that the presence of the enumerated offenses of burglary, arson, extortion, or offenses that involve the use of explosives “indicates that the statute covers only similar crimes, rather than every crime that ‘presents a serious potential of risk of physical injury to another.’ ”[24] The Court noted that the enumerated offenses “all typically involve purposeful, ‘violent,’ and ‘aggressive’ conduct.”[25] This was important because such conduct makes it “more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim.”[26] The crime of driving under the influence was not such a crime. “By way of contrast, statutes that forbid driving under the influence ... typically do not insist on purposeful, violent, and aggressive conduct.”[27] The Court explained that DUI offenses “are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all.”[28] Drunk driving “need not be purposeful or deliberate.”[29] It involves negligence or recklessness, the Court reasoned. The ACCA “focuses upon the special danger created when a particular type of offender — a violent criminal or drug trafficker — possesses a gun.”[30] To determine which offenders fall into this category, “the Act looks to past crimes. This is because an offender’s criminal history is relevant to ... the kind or degree of danger the offender would pose were he to possess a gun.”[31] The Court concluded that although driving under the influence “reveal[s] a degree of callousness toward risk,” crimes involving intentional or purposeful conduct “also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger,” while strict liability crimes do not.[32]
The Supreme Court then listed examples of crimes that, “though dangerous, are *219 not typically committed by those whom one normally labels ‘armed career criminals.’ ”[33] The examples given by the Court were reckless pollution, negligent pollution of a sewer system, recklessly tampering with consumer products, and seamen’s inattention to duty causing serious accidents, all of which presented a risk of serious injury.[34] The Court had already emphasized at the outset of its opinion that “[djrunk driving is an extremely dangerous crime,” responsible for thousands of deaths each year,[35] and in discussing strict liability offenses such as DUI, the Court reiterated that “[t]he distinction we make does not minimize the seriousness of the risks attached to driving under the influence.”[36] But the risk of physical injury was not determinative of whether a crime was a violent felony.[37] “[A] prior record of violent and aggressive crimes committed intentionally” is “associated with a likelihood of future violent, aggressive, and purposeful ‘armed career criminal’ behavior in a way that” strict liability crimes are not.[38]
Less than a year after it decided Begay, the Supreme Court provided further guidance in Chambers v. United States[39] as to the meaning of “violent felony” as used in the ACCA. The prior conviction at issue was for failure to report for penal confinement, a violation of Illinois law.[40] After applying its categorical approach to the Illinois statute under which Chambers had been convicted, the Court concluded that failure to report “is a separate crime, different from escape,” and that “[t]he behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody.”[41] The Court concluded that failure to report to a penal institution for confinement “does not ‘involve conduct that presents a serious potential risk of physical injury to another.’ ”[42] The Court reasoned, “[conceptually speaking, the crime amounts to a form of inaction, a far cry from the ‘purposeful, violent, and aggressive conduct’ potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion.”[43] The Court rejected the Government’s argument that “a failure to report reveals the offender’s special, strong aversion to penal custody,” observing that “[t]he question is whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a ‘serious potential risk of physical injury.’ ”[44]
In the present case, Marquez contends that his prior conviction is similar to the DUI at issue in Begay. There is authority from the New Mexico Supreme Court indicating that possession of a deadly weapon in prison[45] is “a crime closely approaching *220 a strict liability crime.”[46] The New Mexico court agreed with a California appellate court that “ ‘[e]vil intent or intended use for an improper purpose is not an element of the crime.’ ”[47] The New Mexico court then considered whether duress was a defense to this offense, recognizing that some states have held that duress is not a defense because of the need to protect inmates and officers from assaults with dangerous weapons.[48] However, the New Mexico court did not follow suit and instead recognized a narrow duress exception, drawing on federal case law regarding duress as a defense to the crime of felon in possession of a firearm.[49]
Subsequently, the New Mexico court of appeals concluded in dicta that the offense of possessing a deadly weapon by a prisoner is not, strictly speaking, a strict liability offense because the mens rea required is knowing possession.[50] The New Mexico court of appeals observed that “[although the statute is silent with respect to the mens rea element, the uniform jury instruction for the crime requires the jury to find that the accused possessed a deadly weapon,” and “that if possession is contested the instruction on possession at UJI 14-130 NMRA should also be given.”[51] The uniform jury instruction to which the court referred provides that “[a] person is in possession of (name of object) when, on the occasion in question, he knows what it is, he knows it is on his person or in his presence and he exercises control over it. ”[52] The New Mexico court also cited as authoritative an Oregon decision that the New Mexico court described in a parenthetical as “stating statute prohibiting possessing, carrying, or having weapons in one’s custody and control in a penal institution not meant to include unknowing acts.”[53] We accordingly have no reason to doubt that although the crime of which Marquez was previously convicted approaches strict liability, his offense was a knowing possession of a deadly weapon in prison, and the elements of duress as defined by the New Mexico court were not present. This means, at a minimum, that he was not under an unlawful or imminent threat of death or serious bodily injury and did not recklessly place himself in a situa *221 tion that would likely compel him to possess the deadly weapon. Marquez’s offense involved intentional or purposeful conduct.
We are persuaded, based on the Supreme Court’s reasoning in Begay[54] and Chambers,[55] that Marquez’s conviction for possession of a deadly weapon by a prisoner in a penal institution is a crime of violence. This offense is unlike the strict liability crimes that the Court specifically identified in Begay, such as driving under the influence, reckless pollution, negligent pollution of a sewer system, recklessly tampering with consumer products, or seamen whose inattention to duty causes serious accidents.[56] Undoubtedly, those crimes, like a prisoner’s possession of a deadly weapon, present a serious potential risk of physical injury to another.[57] But a prisoner’s possession of a deadly weapon is more similar “in kind”[58] to arson, burglary, extortion, or crimes involving the use of explosives. A prisoner’s possession of a deadly weapon is an intentional act “associated with a likelihood of future violent ... behavior in a way that”[59] the strict liability crimes identified in Begay are not. The Supreme Court explained in Begay that the enumerated crimes, including burglary, “all typically involve purposeful, violent, and aggressive conduct,”[60] and that this “conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim.”[61] The Court distinguished burglary and arson from driving under the influence, observing “[i]n both instances, the offender’s prior crimes reveal a degree of callousness toward risk, but in the former instance they also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.”[62] A prisoner in possession of a deadly weapon within a penal institution is significantly more likely to attack or physically resist an apprehender, such as a guard, or another inmate.[63]
The kind of risk posed by an inmate in possession of a deadly weapon is decidedly different from the strict liability offenses identified in Begay and very similar in kind and degree to the risk posed by the crime of burglary of a dwelling. A burglar may not intend to injure anyone when he unlawfully invades a residence for the purpose of theft. A burglar may even choose to commit the crime when no one is home. But burglary is nonetheless considered purposeful, violent, and aggressive con *222 duct.[64] As the Supreme Court has recognized, “[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another’s property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party.”[65] The Supreme Court concluded in Begay that commission of burglary “show[s] an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.”[66] By analogy, an inmate may not intend to attack another person when he obtains a deadly weapon, but at a minimum his intentional possession of a deadly weapon signals his willingness to use it if, in his mind, the occasion warrants it. Like burglary, the “main risk” of an inmate in possession of a deadly weapon is “the possibility of a face-to-face confrontation” with another person. A past crime of possessing a deadly weapon while incarcerated “is relevant to the question [of] whether [a defendant] is a career criminal,”[67] because it is an indicator that he “is the kind of person who might deliberately” use a deadly weapon to inflict serious bodily injury on another person, including “pointing] the gun and pull[ing] the trigger.”[68]
Possession of a deadly weapon in prison is similar in kind, and in degree of risk posed, to another of the enumerated crimes of violence under the commentary to the Guidelines, which is unlawful possession of a firearm described in 26 U.S.C. § 5845(a), such as a sawed-off shotgun.[69] The weapons included in § 5845(a) are primarily used for violent purposes when unlawfully possessed.[70] The possession of a deadly weapon in prison is primarily for violent purposes, as there is no legitimate reason for the possession.[71] Importantly, the inclusion of the enumerated offense of possession of certain prohibited weapons refutes Marquez’s argument that a possession offense cannot be a crime of violence.
The offense of possession of a deadly weapon by an inmate differs from a generic felon in possession of a firearm offense, which is specifically excluded under the Guidelines as a crime of violence as defined in section 4B1.2 unless the firearm was one of the enumerated varieties.[72] A felon may be in possession of certain firearms, such as a pistol or hunting rifle, for recreational purposes, even though that possession is unlawful. By contrast, as noted above, there is no purpose for pos *223 session of a deadly weapon in prison other than to have the means to initiate violence or respond to violence with violence. In that regard, possession of a deadly weapon by one who is incarcerated is similar to possession of a sawed-off shotgun or one of the other weapons enumerated in section 4B1.2,[73] possession of which will result in a sentencing enhancement.
Ill
We are not the first circuit court to consider whether possession of a deadly weapon by an inmate is a crime of violence or a violent felony, and there is a split of authority. The Tenth Circuit concluded that such an offense is a “violent felony” within the meaning of the ACCA.[74] Subsequently, the Third Circuit disagreed, concluding that such an offense is not a “crime of violence” within the meaning of section 4B1.2 of the Guidelines.[75] Neither court had difficulty in concluding that an inmate’s possession of a deadly weapon presented a serious potential risk of physical injury.[76] The courts parted company over whether such an offense is similar in kind, as well as in degree of risk, to burglary, arson, extortion, or crimes involving explosives.[77]
In Zuniga, the Tenth Circuit reasoned that a prior Texas conviction for possession of a deadly weapon in prison was not a strict liability crime because under Texas law, it required either intentional or reckless conduct.[78] The Tenth Circuit also reasoned that the crime was violent because it created a likelihood of violence, not unlike that inherent in burglary.[79] The court was persuaded that possession of a deadly weapon in prison indicated that the defendant was prepared to use violence if necessary.[80]
The Third Circuit considered Zuniga in its decision in Polk, but rejected the Tenth Circuit’s reasoning.[81] The decision in Polk instead concluded that “[pjost-Bepow/, the distinction between active and passive crimes is vital when evaluating offenses under the Career Offender Guidelines.”[82] The court determined that “[wjhile possessing a weapon in prison is purposeful, *224 in that we may assume one who possesses a shank intends that possession, it cannot properly be characterized as conduct that is itself aggressive or violent, as only the potential exists for aggressive or violent conduct,” and possession is a passive crime.[83] We disagree with this analysis for the reasons considered above, not the least of which is that one of the enumerated crimes of violence in section 4B1.2 of the Guidelines is a felon in possession of certain firearms. We conclude that the better-reasoned approach is that taken by the Tenth Circuit.
Our court has previously considered the import of Begay in determining whether various crimes are crimes of violence. Recently, in United States v. Hughes,[84] we held that a conviction based on a prisoner’s escape from federal custody or confinement[85] was a violent felony within the meaning of the ACCA. We reasoned that “even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.”[86] We further observed that “escape is typically committed in a purposeful manner, and when these escapes cause injuries, those injuries typically result from intentional action, not negligence or even recklessness.”[87] A prisoner’s possession of a deadly weapon in prison presents an analogous risk and similar intentional conduct. When deadly weapons are used by prisoners, the injuries typically result from intentional, purposeful actions, not negligence or recklessness.
In other cases decided since Begay issued, we have held that evading arrest or detention by use of a vehicle,[88] robbery by sudden snatching,[89] stalking,[90] and being a felon in possession of a short-barreled shotgun[91] are crimes of violence, and that terroristic threatening[92] is not.
The Ninth Circuit has recently held that a prior conviction for possession of a weapon in jail is a crime of violence within the meaning of U.S.S.G. § 4B 1.2(1)(ii).[93] In that case, the defendant had previously been convicted of violating California law[94] by possessing a shank while in jail.[95] The Ninth Circuit relied on its pre-Begay deci *225 sion in United States v. Young,[96] reasoning that this offense “created a viable risk that a person might be injured, which made it a crime of violence.”[97]
The dissent rejects the holdings of the Ninth and Tenth Circuits, finding the Third Circuit’s reasoning in United States v. Polk[98] more persuasive. For the reasons considered above, we respectfully disagree with the Third Circuit and the dissent. The dissent emphasizes that “ ‘[t]he possibility that one will confront another person with violent results is not sufficient.’[99] While we do not categorically disagree with that statement, the possibility that one will confront another with violent results must be examined. It is the nature and degree of the risk that guides us. The Supreme Court recognized in James that “[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another’s property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party.”[100] The risk that a prisoner armed with a deadly weapon will attack or resist a third person is at least as great as the risk presented by burglary of a dwelling and is of the same nature as the risk presented by burglary. The dissent attempts to distinguish an inmate’s possession of a deadly weapon from burglary by arguing that “the difference ‘in kind’ between the offense at issue here and the comparative crimes is that ‘[bjurglary requires both the intent to enter a building and the intent to commit a crime once inside’ ” and that “ ‘[t]his second intent is what makes burglary purposeful, violent, and aggressive in all cases.’ ”[101] Such a distinction cannot be squared with the reasoning in James.
The dissent attempts to minimize the nature of Marquez’s prior conviction by describing the club he possessed in prison, which was made of a rolled, dried, and hardened magazine or other type of paper.[102] However, Marquez has never contended that the club did not truly constitute a deadly weapon. Nor could he successfully do so in this court. He was convicted under New Mexico law of possessing a deadly weapon, and we cannot dismiss this judicial determination by attempting to diminish the dangerousness of the particular weapon he possessed. A factual determination was made in the prior state court proceedings that the club was capable of producing death or great bodily injury. We must accept that finding.
The district court did not err in concluding that Marquez’s prior conviction for possession by an inmate of a deadly weapon in a penal institution was for an offense that constitutes a crime of violence.
For the foregoing reasons, we AFFIRM the district court’s judgment.

. U.S. Sentencing Guidelines Manual (U.S.S.G.) § 4B 1.2(a)(2) (2009).

. Id. § 4B1.1.

. N.M. Stat. Ann. § 30-22-16.

. N.M. Stat. Ann. § 30-l-12(A), (B).

. 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008).

. U.S.S.G. § 4B 1.2(a)(2).

. United States v. Mohr, 554 F.3d 604, 606 (5th Cir.), cert. denied,-U.S.-, 130 S.Ct. 56, 175 L.Ed.2d 45 (2009).

. U.S.S.G. § 4B1.1(a).

. Id. § 4B 1.2(a).

. See, e.g., United States v. Anderson, 559 F.3d 348, 355 (5th Cir.) (referring to U.S.S.G. § 4B 1.2(a)(2) as a "residual clause”), cert. denied, - U.S. -, 129 S.Ct. 2814, 174 L.Ed.2d 308 (2009); Mohr, 554 F.3d at 607 (same); see also Johnson v. United States,U.S. --, 130 S.Ct. 1265, 1274, 176 L.Ed.2d 1 (2010) (discussing “the so-called 'residual clause’ ” in 18 U.S.C. § 924(e)(2)(B)(ii)); Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 689, 172 L.Ed.2d 484 (2009) (referring to clause (ii) of § 924(e)(2)(B) as the "ACCA’s so-called residual clause”).

. U.S.S.G. § 4B1.1 cmt. background.

. 18 U.S.C. § 16 provides:
The term “crime of violence” means—
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

. U.S.S.G. § 4B1.1 cmt. background (quoting 28 U.S.C. § 991(b)(1)(B)).

. Compare id. § 4B1.2(a) with 18 U.S.C. § 924(e)(2)(B), which provides in pertinent part:
(B) the term "violent felony” means any crime punishable by imprisonment for a term exceeding one year ... that—
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise in *217 volves conduct that presents a serious potential risk of physical injury to another.

. See U.S.S.G. § 4B1.2(a)(2).

. U.S.S.G. § 4B1.2 cmt. n.l.

. Id. (“ ‘Crime of violence’ does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a).” The note also provides, "[ujnlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a 'crime of violence.’ ”).

. 18 U.S.C. § 1791(d)(1)(B).

. See Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009); Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008).

. See United States v. Mohr, 554 F.3d 604, 609 (5th Cir.), cert. denied,-U.S.-, 130 S.Ct. 56, 175 L.Ed.2d 45 (2009); see also United States v. Polk, 577 F.3d 515, 518-19 (3d Cir.2009) (observing that the Supreme Court vacated and remanded for reconsideration in light of Begay courts of appeals' decisions applying the career offender Guidelines, leading the Third Circuit to conclude that “this leaves little doubt that Begay bears on our determination of whether to classify an offense as a ‘crime of violence.’ ”); United States v. Bartee, 529 F.3d 357 (6th Cir.2008); United States v. Williams, 537 F.3d 969 (8th Cir.2008).

. 553 U.S. at 139, 128 S.Ct. 1581.

. 129 S.Ct. at 689.

. United States v. Rodriguez-Jaimes, 481 F.3d 283, 287 (5th Cir.2007).

. 553 U.S. at 142, 128 S.Ct. 1581 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)); see also id. at 143, 128 S.Ct. 1581 ("we should read the examples as limiting crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves”); id. ("The statute’s history offers further support for our conclusion that the examples in clause (ii) limit the scope of the clause to crimes that are similar to the examples themselves.”).

. Id. at 144, 128 S.Ct. 1581 (quoting United States v. Begay, 470 F.3d 964, 980 (10th Cir.2006) (McConnell, J., dissenting in part)).

. Id. at 145, 128 S.Ct. 1581.

. Id.

. Id.

. Id.

. Id. at 146, 128 S.Ct. 1581.

. Id.

. Id.

. Id.

. Id. at 146-47, 128 S.Ct. 1581.

. Id. at 141, 128 S.Ct. 1581.

. Id. at 147, 128 S.Ct. 1581.

. See id.

. Id. at 148, 128 S.Ct. 1581.

. 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009).

. Id. at 690.

. Id. at 691.

. Id. (quoting the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii)).

. Id. at 692 (quoting Begay, 553 U.S. at 145-46, 128 S.Ct. 1581).

. Id. (quoting § 924(e)(2)(B)(ii)).

. N.M. Stat. Ann. § 30-22-16.

. State v. Baca, 114 N.M. 668, 845 P.2d 762, 768 (1992); see also id. (referring to the offense as "a near strict liability crime”); id. (discussing "the high level of protection afforded by a statute approaching strict liability”); id. at 769 (identifying "the purpose of the near strict liability statute”).

. Id. at 768 (quoting People v. Velasquez, 158 Cal.App.3d 418, 204 Cal.Rptr. 640, 641 (1984)).

. Id. (citing People v. Rau, 174 Mich.App. 339, 436 N.W.2d 409 (1989); Velasquez, 204 Cal.Rptr. at 643).

. Id. at 768-69 (holding that to establish a defense of duress "the defendant must produce sufficient evidence that: (1) he was under an unlawful and imminent threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation that would likely compel him to engage in the criminal conduct; (3) he did not have a reasonable legal alternative (in other words, he could not have reasonably avoided the threatened harm or the criminal conduct in which he engaged); and (4) a direct causal relationship existed between the criminal action and the avoidance of the threatened harm,” and that "[w]e agree with the federal courts that 'the keystone of the analysis is that the defendant must have no alternative — either before or during the event — to avoid violating the law.’ " (citations omitted)).

. State v. Gonzalez, 137 N.M. 107, 107 P.3d 547, 552 (N.M.Ct.App.2005).

. Id.

. N.M. Rules Ann., Crim. UJI 14-130.

. Gonzalez, 107 P.3d at 552 (citing State v. Wolfe, 288 Or. 521, 605 P.2d 1185, 1188 (Or. 1980)).

. Begay v. United States, 553 U.S. 137, 145-48, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008).

. Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 691-92, 172 L.Ed.2d 484 (2009).

. See Begay, 553 U.S. at 146-47, 128 S.Ct. 1581.

. Id. (describing the strict liability offenses identified as "dangerous”).

. Id. at 143, 128 S.Ct. 1581.

. Id. at 148, 128 S.Ct. 1581.

. Id. at 144-45, 128 S.Ct. 1581 (citation omitted).

. Id. at 145, 128 S.Ct. 1581

. Id. 146, 128 S.Ct. 1581.

. See United States v. Robles-Rodriguez, 204 Fed.Appx. 504, 506-07 (5th Cir.2006) (unpublished) (per curiam) (noting that "an inmate's possession, while in prison, of an instrument designed and intended to be used as a weapon, carries with it the same inherent potential to ‘explode into violence’ that drove our holding in Ruiz" that "an escape or an attempt to escape from U.S. custody in a prison camp constitutes a crime of violence.”) (quoting United States v. Ruiz, 180 F.3d 675, 676-77 (5th Cir.1999)).

. See Begay, 553 U.S. at 144-45, 128 S.Ct. 1581.

. James v. United States, 550 U.S. 192, 203, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007).

. Begay, 553 U.S. at 146, 128 S.Ct. 1581.

. Id.

. Id.

. U.S.S.G. § 4B1.2 cmt. n.1 (" 'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a).”); see also Begay, 553 U.S. at 146, 128 S.Ct. 1581.

. See United States v. Jennings, 195 F.3d 795, 799 (5th Cir.1999) (recognizing that the unlawful possession of the weapons listed in 26 U.S.C. § 5845(a) creates a ''virtual inevitability that such possession will result in violence”).

. See United States v. Rodriguez-Jaimes, 481 F.3d 283, 287 (5th Cir.2007) ("That fact [that the possession offense occurs in prison rather than in the outside world] creates a perpetual risk of injury and precludes any legitimate reasons that a non-incarcerated individual could have for possessing a weapon (e.g., recreation).”) (quoting United States v. Robles-Rodriguez, 204 Fed.Appx. 504, 507 (5th Cir.2006) (unpublished) (per curiam) (internal quotation marks omitted)).

. U.S.S.G. § 4B1.2 cmt. n.l.

. Id.

. United States v. Zuniga, 553 F.3d 1330, 1332 (10th Cir.), cert. denied, - U.S. -, 130 S.Ct. 62, 175 L.Ed.2d 47 (2009).

. United States v. Polk, 577 F.3d 515, 517 (3d Cir.2009).

. Id. at 519 (observing that "no doubt possession of a weapon in prison involves a high degree of risk” and recognizing it presented the "possibility that one will confront another person with violent results”); Zuniga, 553 F.3d at 1334-35 (concluding that the offense "clearly involves conduct that presents a serious potential risk of physical injury to another”).

. Polk, 577 F.3d at 519 ("we hold that possession of a weapon, even in a prison, is not 'roughly similar, in kind as well as in degree of risk posed,' to the enumerated crimes of burglary, arson, extortion, or use of explosives”) (quoting Begay, 553 U.S. at 143, 128 S.Ct. 1581); Zuniga, 553 F.3d at 1334 (concluding that offense is " 'roughly similar, in kind as well as in degree of risk posed,’ to burglary, arson, extortion, or crimes involving explosives”) (quoting Begay, 553 U.S. at 143, 128 S.Ct. 1581).

. Zuniga, 553 F.3d at 1335.

. Id.

. Id.

. Polk, 577 F.3d at 520 ("While we understand [the Tenth Circuit’s] desire to continue treating possession of a weapon in prison as a 'crime of violence,’ we cannot agree with its reasoning that the likelihood of potential for violent and aggressive behavior to come about as a result of the offense is sufficient for qualification in light of Begay").

. Id. at 519.

. Id.

. 602 F.3d 669 (5th Cir.2010).

. 18 U.S.C. § 751(a).

. Hughes, 602 F.3d at 675.

. Id. at 677.

. United States v. Harrimon, 568 F.3d 531, 534-35 (5th Cir.), cert. denied, — U.S.-, 130 S.Ct. 1015, 175 L.Ed.2d 621 (2009).

. United States v. Bryant, 312 Fed.Appx. 698, 703 (5th Cir.2009) (unpublished) (per curiam).

. United States v. Mohr, 554 F.3d 604, 609-10 (5th Cir.), cert. denied, -U.S. -, 130 S.Ct. 56, 175 L.Ed.2d 45 (2009).

. United States v. Moore, 326 Fed.Appx. 794, 794-95 (5th Cir.) (unpublished) (per curiam), cert. denied,-U.S.-, 130 S.Ct. 337, 175 L.Ed.2d 223 (2009). The commentary to U.S.S.G. § 4B1.2 specifically states that unlawfully possessing the type of firearm that Moore possessed is a crime of violence. Id. at 795.

. United States v. Johnson, 286 Fed.Appx. 155, 157-58 (5th Cir.2008) (unpublished) (per curiam).

. United States v. Mitchell, 624 F.3d 1023, 2010 WL 4105220 (9th Cir.2010).

. Cal.Penal Code § 4574(a).

. Mitchell, 624 F.3d at 1026-27, 2010 WL 4105220 at *2.

. 990 F.2d 469 (9th Cir.1993).

. Mitchell, 624 F.3d at 1026-27, 2010 WL 4105220 at *2.

. 577 F.3d 515 (3d Cir.2009).

. Post at 227 (quoting Polk, 577 F.3d at 519) (emphasis omitted).

. James v. United States, 550 U.S. 192, 203, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007).

. Post at 227-28 (quoting United States v. Templeton, 543 F.3d 378, 383-84 (7th Cir.2008) (holding that some escapes from prison are crimes of violence while others are not)).

. See, e.g., post at 231 ("And a simple, makeshift club does not necessarily serve only aggressive and violent purposes. Marquez could have possessed the weapon for the purpose of deterring others from attacking him.”).