OPINION
KING, Circuit Judge:
On December 6, 2010, Jermaine Mobley pleaded guilty in the Eastern District of North Carolina to the offense of possession of a prohibited object in prison, in violation of 18 U.S.C. § 1791(a)(2). The sentencing court thereafter found Mobley to be a career offender under § 4B 1.1 of the Sentencing Guidelines and imposed a sentence of thirty-seven months. On appeal, Mobley challenges his sentence, maintaining that the court erred in ruling that his offense of conviction constituted a crime of violence for purposes of the career offender sentencing enhancement of the Guidelines. As explained below, we reject Mobley’s contention and affirm.
I.
At the time of his offense, Mobley was serving a 151-month sentence at FCI Butner, near Raleigh, North Carolina, for his prior federal convictions of possession with intent to distribute heroin and being a felon in possession of a firearm. On September 14, 2009, Mobley visited Butner’s infirmary, complaining of pain and numbness in his feet. During the infirmary visit, an attending physical therapist picked up Mobley’s right shoe to examine its insole. Mobley promptly seized the shoe from the therapist and removed an eight-inch “shank” that had been concealed in the shoe’s insole.[1] The therapist saw the shank and, despite Mobley’s efforts to hide it under an examination table, the shank was recovered by the prison staff.
*627 On August 18, 2010, Mobley was charged in a single-count indictment of, while an inmate at FCI Butner, “possessing] a prohibited object, to wit, a shank, in violation of Title 18, United States Code, Section 1791(a)(2).” J.A. 6.[2] Section 1791(a)(2) provides, in part, that “whoever!,] being an inmate of a prison, ... possesses ... a prohibited object [shall be guilty of an offense against the United States].” The term “prohibited object” is defined in § 1791 with a litany of specifics, including weapons, controlled substances, currency, and telephones. Relevant to Mobley’s offense of conviction, the statutory definition includes “an object that is designed or intended to be used as a weapon or to facilitate escape from a prison.” 18 U.S.C. § 1791(d)(1)(B). Punishment for the offense of conviction is a fine or “imprisonment for not more than 5 years, or both.” Id. § 1791(b)(3).
After Mobley pleaded guilty, a probation officer prepared a presentence investigation report (“PSR”). The PSR calculated Mobley’s base offense level under the Guidelines as 13, then applied the career offender sentencing enhancement to increase his base offense level to 17. The PSR reduced the offense level by three for acceptance of responsibility, resulting in a total offense level of 14. Mobley’s criminal history category was VI, and the advisory sentencing range for an offense level of 14 and a criminal history category of VI is thirty-seven to forty-six months. If the career offender sentencing enhancement had not been applied, Mobley’s total offense level would have been 10, and his sentencing range would have been twenty-four to thirty months. Pursuant to § 4B 1.1 of the Guidelines, a convicted defendant is considered to be a career offender if:
(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
(2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and
(3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.
USSG § 4Bl.l(a).
Mobley was thirty-six years old at the time of his offense of conviction, and he then had at least two prior felony convictions for controlled substance offenses. At his sentencing hearing, Mobley objected to the district court’s application of the career offender enhancement, contending that possession of a shank in prison failed to qualify as a crime of violence. The court overruled this objection, however, ruling that the instant offense of conviction constitutes a crime of violence, and explaining that “there is no passive possession of a weapon in a prison setting.” J.A. 24. Mobley filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).
II.
A determination of whether a defendant’s offense of conviction constitutes a crime of violence under § 4B1.2(a) of the Guidelines is a legal issue that we review de novo. See United States v. Jenkins, 631 F.3d 680, 682 (4th Cir.2011).
III.
A.
The term “crime of violence” is defined in the Guidelines as any offense *628 “punishable by imprisonment for a term exceeding one year,” and that
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
USSG § 4131.2(a). The primary issue in Mobley’s appeal is whether his offense of conviction falls within the “residual clause” of § 4B1.2(a)(2) — that is, whether possession of a shank while in prison at Butner “otherwise involves conduct that presents a serious potential risk of physical injury to another.”
On appeal, Mobley maintains that “mere possession” of a shank in prison does not, under the relevant authorities, involve the active or assaultive conduct required of a crime of violence under the Guidelines. He asserts that mere possession of a shank in prison is a passive crime and does not constitute confrontational conduct, and that the offense of conviction does not present the serious risk of physical injury contemplated by the Guidelines in defining a crime of violence.
In order to properly assess this issue, it is necessary to briefly review the relevant legal principles and Guidelines commentary. The Supreme Court has identified and explained the principles underlying what constitutes a violent felony under the Armed Career Criminal Act (the “ACCA”), or, for the purposes of this appeal, a crime of violence under § 4B1.2 of the Guidelines. See, e.g., Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011); Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009); Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008).[3]
In Begay, the Supreme Court explained the ACCA’s enumerated offenses of burglary, arson, or extortion, “as limiting the crimes that [the residual clause] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves,” but it declined to include driving under the influence as one of those “roughly similar” offenses. Be-gay, 553 U.S. at 143, 128 S.Ct. 1581. Last year, in Sykes, the Supreme Court focused on the question of whether the offense of intentional vehicular flight was comparable in degree of risk to the enumerated offenses. Sykes, 131 S.Ct. at 2273. The Court concluded in the affirmative, determining that a “[r]isk of violence is inherent to vehicle flight,” is at least equal to the enumerated offenses of burglary and arson. Id. at 2274.[4]
The commentary to § 4B1.2, more specifically Application Note 1 thereof, expands upon the roster of enumerated offenses by specifying additional ones, such *629 as manslaughter and kidnapping, that also constitute crimes of violence, see USSG § 4B1.2, cmt. n. 1 (“ ‘Crime of violence’ includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.”), and by identifying various offenses that do not constitute crimes of violence, such as unlawful possession of several types of firearms. See id. (“ ‘Crime of violence’ does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a).”).[5] The crimes specified in Application Note 1 of the commentary to § 4B1.2 serve as additional enumerated offenses, or “example crimes,” to be considered when determining whether a prior conviction or an instant offense of conviction otherwise involves conduct that presents a serious potential risk of physical injury to another. See Peterson, 629 F.3d at 438 (“Although the language of ACCA that was considered in Begay is identical to the language in USSG § 4B1.2(a)(2), the commentary to § 4B 1.2(a)(2) adds to the list of example crimes listed in § 4B1.2(a)(2)[.]”); accord United States v. Marrero, 677 F.3d 155, 164 (3d Cir.2012) (“[Ojffenses listed in Application Note 1 [to USSG § 4B1.2] are ‘enumerated’ for purposes of the crime-of-violence analysis.”). With these principles in mind, we turn to the specifics of Mobley’s contention.
1.
Mobley’s position on appeal relies heavily on the Third Circuit’s decision in United States v. Polk, 577 F.3d 515 (3d Cir.2009). Like Mobley, Polk had been convicted of possessing a shank in prison, in violation of 18 U.S.C. § 1791(a)(2). The district court sentenced Polk as a career offender, characterizing his instant offense of conviction as a crime of violence. The Third Circuit reversed, applying the Supreme Court’s analysis in Begay and determining that possession of a weapon — “even in a prison” — is not similar in kind or degree of risk posed to the enumerated offenses and, thus, does not constitute a crime of violence under the career offender sentencing enhancement found in § 4B 1.2 of the Guidelines. The court of appeals explained:
While no doubt possession of a weapon in prison involves a high degree of risk, Begay points out that even a serious potential for injury is not enough to qualify a crime for career offender enhancement; the risk created must also be “similar in kind” to the crimes set out [in Guidelines § 4B1.2(a)(2) ]. They involve overt, active conduct that results in harm to a person or property. The possibility that one will confront another person with violent results is not sufficient.
While possessing a weapon in prison is purposeful, in that we may assume one who possesses a shank intends that possession, it cannot properly be characterized as conduct that is itself aggressive or violent, as only the potential exists for aggressive or violent conduct.
Polk, 577 F.3d at 519 (citations omitted).
The Third Circuit, however, has been the only court of appeals to adopt the position advanced by Mobley in this case. Three other of our sister circuits, the Fifth, Eighth, and Tenth, have addressed *630 the same issue and reached a different conclusion. See United States v. Marquez, 626 F.3d 214 (5th Cir.2010); United States v. Boyce, 633 F.3d 708 (8th Cir.2011); United States v. Perez-Jiminez, 654 F.3d 1136 (10th Cir.2011). The Fifth Circuit in Marquez reasoned that possession of a deadly weapon by a prison inmate is similar in kind and degree of risk posed to the crime of burglary because, “(l )ike burglary, the ‘main risk’ of an inmate in possession of a deadly weapon is ‘the possibility of a face-to-face confrontation’ with another person.” Id. at 222 (quoting Begay, 553 U.S. at 144-45, 128 S.Ct. 1581).
Similarly, in Boyce, the Eighth Circuit determined that possession of a weapon in prison presents a serious potential risk of physical injury to another, inasmuch as there is no lawful reason for a prison inmate to ever have a weapon. See 633 F.3d at 711. The court concluded that possession of a weapon in prison is roughly similar in kind and degree of risk posed to the enumerated crimes of burglary, arson, and extortion. Id. at 712. The Eighth Circuit thereby rejected the view taken by the Third Circuit in Polk, reasoning that an inmate’s possession of a weapon in prison involves purposeful, violent, and aggressive conduct, and that it creates a likelihood of future violent confrontations, much like the enumerated offenses. Id. at 711-12.
Finally, the Tenth Circuit, in PerezJiminez, rendered a decision last year that is essentially on all fours with this appeal, concluding, in a post-Sykes setting, that “possessing a dangerous or deadly weapon in prison ‘enables violence.’ ” 654 F.3d at 1143 (quoting Boyce, 633 F.3d at 712). Perez-Jiminez was, like Mobley, proseeuted for violating 18 U.S.C. § 1791(a)(2), and the court of appeals was called upon to assess the very question we face, that is, whether possession of a shank in prison constitutes a crime of violence under the career offender sentencing enhancement.[6] The Tenth Circuit ruled that it did, observing that there is no innocent purpose for the possession of a dangerous weapon by a prison inmate, and concluding that such possession amounts to a crime of violence for purposes of the career offender sentencing enhancement. Id. at 1143-44. The court explained:
Outside of prison, [t]he felon who unlawfully possesses a firearm, although disobeying the law, may have a legitimate use intended for the firearm, such as target shooting or collecting. But there is no similarly innocent purpose behind the possession of a deadly weapon by a prison inmate, as [t]he confines of prison preclude any recreational uses for a deadly weapon.
[Tjhere is no legitimate purpose for a prisoner to carry a weapon designed to kill, injure or disable another. On the contrary, the only reason to carry such a weapon is to use it to attack another or to deter an attack.
Id. at 1143 (citations and internal quotation marks omitted).
Put simply, we agree with the Fifth, Eighth, and Tenth Circuits that possession of a shank in prison, in contravention of § 1791(a)(2), constitutes a crime of violence under § 4B1.2(a)(2) of the Guidelines. That offense is similar in kind and degree of risk posed to the enumerated offenses, in that a prison inmate’s possession of a weapon constitutes a “purposeful, violent, and aggressive” offense and “[s]er *631 ious and substantial risks are ... inherent” to the crime. Begay, 553 U.S. at 144-45, 128 S.Ct. 1581; Sykes, 131 S.Ct. at 2276. As the government emphasizes, we have recognized that “it is virtually impossible to eliminate violence among the incarcerated.” Taylor v. Freeman, 34 F.3d 266, 273 n. 6 (4th Cir.1994). Like the offense of burglary of a dwelling, the availability of contraband weapons in the prison context obviously facilitates violence and injury. See Shrader v. White, 761 F.2d 975, 991 (4th Cir.1985) (Sprouse, J., dissenting); see also Marquez, 626 F.3d at 221-22 (recognizing that possession of weapon in prison is similar to burglary because violent aspects lie in potential for confrontation). We therefore readily agree with the Tenth Circuit’s summation in Perez-Jiminez that “[Tjhere is no legitimate purpose for a prisoner to carry a weapon designed to kill, injure or disable another. On the contrary, the only reason to carry such a weapon is to use it to attack another or to deter an attack.” 654 F.3d at 1143.
2.
The identification of additional enumerated offenses in Application Note 1 to the commentary to § 4B1.2 reinforces our conclusion today. Although the unlawful possession of most firearms is not a crime of violence for purposes of § 4B1.2, Application Note 1 specifies that “[unlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a ‘crime of violence.’ ” USSG § 4B1.2, cmt. n. 1. When these offenses and the others listed in Application Note 1 are included with those specified in the text of § 4B1.2(a)(2), see Peterson, 629 F.3d at 439, there are at least eleven “enumerated offenses” identified for career-offender purposes: (1) burglary of a dwelling; (2) arson; (3) extortion; (4) crimes involving the use of explosives; (5) murder; (6) manslaughter; (7) kidnapping; (8) aggravated assault, (9) forcible sex offenses; (10) robbery; and (11) possession of a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun. Applying the Begay analysis to this expanded list of enumerated offenses, the question is “whether the predicate offense under consideration is ‘roughly similar, in kind, as well as in degree of risk posed, to the examples.’ ” Peterson, 629 F.3d at 439 (quoting Begay, 553 U.S. at 143, 128 S.Ct. 1581).
Under the Begay analysis, the offense of possessing a shank in prison is similar in kind to the offense of possessing a § 5845(a) weapon outside of prison. Both of these crimes prohibit the possession of dangerous weapons in contexts where they have no lawful purpose. Moreover, because a conviction under § 1791(a)(2) requires proof that the inmate knowingly possessed the prohibited object, see, e.g., United States v. Holmes, 607 F.3d 332, 336-37 (3d Cir.2010), § 1791(a)(2) requires “purposeful” conduct. And while possession of a shank in prison may not involve the same kind of “active” violence and aggression reflected in certain of the other enumerated offenses — such as a murder or a forcible sexual assault — it does involve a similar level of potential violence and aggression reflected in the possession of the weapons, such as a sawed-off shotgun, specified in 26 U.S.C. § 5845(a).
As a result, we are convinced that possession of a shank by an inmate in prison is similar in kind and degree of risk posed to the offenses enumerated in the text of § 4B1.2 and in its binding commentary. We are therefore firmly of the view that Mobley’s offense of conviction “presents a serious potential risk of physical injury to another,” and that his offense of conviction constitutes a crime of violence for pur *632 poses of the career offender enhancement. USSG § 4B1.2(a)(2).[7]
IV.
Pursuant to the foregoing, we affirm the judgment of the district court.

AFFIRMED

. Mobley acknowledges that a shank, which is an improvised sharpened instrument, is a dangerous weapon. At sentencing, Mobley’s counsel referred to the shank as a "weapon” with "the potential for serious injury.” J.A. 19; see also United States v. Perez-Jiminez, 654 F.3d 1136, 1142 (10th Cir.2011) ("It is patent that such shanks are a deadly weapon.”). The prosecutor explained that shanks "are made by inmates from bits and pieces of metal” and sharpened against concrete. J.A. 21. We have previously described a shank as a homemade knife or "a handmade sharp instrument.” United States v. Caro, 597 F.3d 608, 610 (4th Cir.2010); United States v. Perry, 335 F.3d 316, 318 (4th Cir.2003).

. Citations herein to "J.A. -” refer to the contents of the Joint Appendix filed by the parties in this appeal.

. We have frequently observed that the ACCA’s definition of a "violent felony,” set forth in 18 U.S.C. § 924(e)(2)(B), is nearly identical to the Guidelines’ definition of "crime of violence” in § 4B1.2(a). See, e.g., United States v. Jenkins, 631 F.3d 680, 683 (4th Cir.2011). As a result of the similarities between the two definitions, we are entitled to “rely upon precedents evaluating whether an offense constitutes a violent felony under [the ACCA] interchangeably with precedents evaluating whether an offense constitutes a crime of violence under [the Guidelines].” United States v. Clay, 627 F.3d 959, 965 (4th Cir. 2010).

. Mobley and the government disagree about whether and to what extent Sykes limited the application of Begay's similar-in-kind test. There is no need to resolve that issue in this case, however, because, as we will explain, Mobley's sentence may be affirmed under Be-gay.

. Application Note 1 of the commentary to § 4B1.2 is neither inconsistent with nor an erroneous reading of § 4B 1.2(a), and is therefore authoritative and binding. See United States v. Peterson, 629 F.3d 432, 435 (4th Cir.2011); United States v. Hood, 628 F.3d 669, 672-73 (4th Cir.2010).

. The Marquez and Boyce cases — unlike PerezJiminez and Mobley’s case — involved the issue of whether a prior state conviction for possession of a shank in prison was a crime of violence. The analysis conducted in Marquez and Boyce, however, is also governed by the Supreme Court’s precedents and is the very analysis that we conduct here.

. Finally, Mobley also contends on appeal that the residual clause of USSG § 4B 1.2(a)(2) should be stricken as unconstitutionally vague. In the alternative, he argues that the residual clause is ambiguous and does not apply to him because of the rule of lenity. We reject these contentions, however, as the Supreme Court has already determined that the residual clause falls “within congressional power to enact” and constitutes "an intelligible principle [that] provides guidance that allows a person to 'conform his or her conduct to the law.’ ” Sykes v. United States, - U.S. -, 131 S.Ct. 2267, 2277, 180 L.Ed.2d 60 (2011) (citations omitted). Moreover, contrary to the view of our good dissenting colleague, the rule of lenity does not apply in this case. See United States v. Helem, 186 F.3d 449, 455 (4th Cir.1999). Put simply, there is no ambiguity in USSG § 4B 1.2(a)(2), and the rule of lenity thus has no application here. The residual clause encompasses conduct that creates a serious potential risk of injury to another, and, as we have already explained, the possession of a shank in prison plainly creates such a risk.