O’GRADY, District Judge,
dissenting:
In this case we are called to decide whether Appellant Romelus Martin properly received a sentence enhancement under U.S.S.G. § 2K2.1(a)(2) for having two prior convictions for crimes of violence as defined by U.S.S.G. § 4B1.2. Specifically, Martin argues that the district court’s categorization of his 2009 Maryland conviction for fourth degree burglary as a “crime of violence” was improper because it does not proscribe “purposeful, violent, and aggressive” conduct that is similar in kind to the offenses enumerated in § 4B1.2(a)(2). As Judge Diaz noted, the federal courts of appeals have struggled to consistently apply the residual clause in the wake of Begay and Sykes. The extent to which Begay’s “similar in kind” requirement survived Sykes remains highly uncertain, and I join in Judge Diaz’s call for clarity from Congress or the Court.[1] However, because I find that our precedents and those of the Supreme Court compel the conclusion that breaking and entering a dwelling is a “crime of violence” under § 4B1.2, I respectfully dissent and would affirm the sentence imposed by the district court.
I.
I am in agreement, as is Judge Diaz, with Section 111(A) of the majority opinion, in which the Chief Judge deftly analyzes this case under the “degree of risk” test utilized by the Supreme Court in James and Sykes. In 2009, Martin was convicted in Maryland of “breakfing] and entering] the dwelling of another” in violation of Maryland Code Ann., Crim. Law § 6-205(a). Because this crime creates “the possibility of a face-to-face confrontation between the burglar and a third party,” James v. United States, 550 U.S. 192, 203, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), it poses a risk of physical injury comparable to the risk arising from a generic, Taylor burglary, even in the absence of a specific intent element. Therefore, under the familiar “degree of risk” analysis, each of us agrees that Maryland fourth degree burglary of a dwelling constitutes a crime of violence under the Guidelines.
In Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), the Supreme Court added a layer to the “degree of risk” test as it considered whether a prior conviction for driving under the influence was a crime of violence under the § 4B1.2’s residual clause. Although the Court found that DUI presents a serious potential risk of physical injury (and therefore might have satisfied the James “degree of risk” test), it nonetheless held that DUI did not qualify as a crime of violence. The Court reasoned that unlike the crimes enumerated in § 4B1.2(a)(2), which all “typically involve purposeful, violent, and *497 aggressive conduct,” driving under the influence is a strict liability crime. Because DUI does not require “any criminal intent at all,” 553 U.S. at 145, 128 S.Ct. 1581, the Court found that it was not sufficiently “similar in kind” to the enumerated offenses to constitute a crime of violence under the Guidelines. Id. at 143, 128 S.Ct. 1581 (punctuation omitted).
Three years later in Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011), the Court revisited the residual clause, holding that a conviction for knowingly or intentionally “flee[ing] from a law enforcement officer” in a vehicle was categorically a crime of violence under 18 U.S.C. § 924(e).[2] In Sykes, the Court retreated from Begay’s “similar in kind” requirement and found that a “degree of risk” analysis alone was sufficient to resolve the case. Writing for the majority, Justice Kennedy stressed that Be-gay was “[t]he sole decision of this Court concerning the reach of ACCA’s residual clause in which risk was not the disposi-tive factor,” and observed that the phrase “purposeful, violent, and aggressive” had “no precise textual link to the residual clause.” 131 S.Ct. at 2275. The majority explained that in contrast to Begay, in which the Court dealt with DUI (“a crime akin to strict liability, negligence, and recklessness crimes” that does not require any criminal intent), the Indiana statute at issue in Sykes had “a stringent mens rea requirement” of knowledge or intent. Id. at 2275-76. The Court thus found that because the vehicular flight statute proscribed inherently risky conduct and required a criminal mens rea, the “purposeful, violent, and aggressive” test that was used to explain the result in Begay had no bearing on the case. Id. (“As between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us.”).
In the aftermath of Sykes, the courts of appeals have varied in their treatment of Begay’s “similar in kind” test. Some courts have suggested that Begay may not have survived Sykes at all. See, e.g., United States v. Sandoval, 696 F.3d 1011, 1016-17 n. 8 (10th Cir.2012) (“[I]t is hard to say whether the Begay test survived Sykes.... ”). See also United States v. Honeycutt, 2011 WL 2471024, at *4 (S.D.W.Va.2011) (“Even as to such ‘strict liability, negligence, and recklessness crimes,’ however, it is far from clear that the Supreme Court is still committed to the Begay test.”). Most courts, as observed by the Chief Judge, have continued to apply Begay’s “similar in kind” test only to strict liability, negligence, and recklessness crimes. See United States v. Chitwood, 676 F.3d 971, 979 (11th Cir.2012) (collecting cases). Because I find that the Fourth Circuit has taken that path and that burglary of a dwelling under § 6-205(a) is not a strict liability, negligence, or recklessness crime, I must depart from the conclusion reached by the majority.[3]
II.
Although this circuit has continued to make reference to Begay’s “similar in *498 kind” test in residual clause cases after Sykes, we have not uniformly (or even consistently) treated it as a counterpart to the “degree of risk” test. In our most recent residual clause case, this Court held that “[t]he appropriate ‘analysis should focus on the level of risk associated with the previous offense of conviction, notwithstanding the purposeful, violent, and aggressive conduct stressed by the Begay Court in the context of a strict liability offense.’” United States v. Hemingway, 734 F.3d 323, 338 (4th Cir.2013) (emphasis added) (quoting United States v. Vann, 660 F.3d 771, 780 (4th Cir.2011) (King, J., concurring)). The Court went on to explain that “[i]n short, Sykes makes clear that Begay did not substitute the ‘purposeful, violent, and aggressive’ inquiry for the analysis of risk that is already identified in the residual clause.” Id. In another 2013 case, United States v. Carthorne, 726 F.3d 503, 513-15 (4th Cir.2013), we also remained singularly focused on the “degree of risk” analysis, only once citing to Begay in a footnote.[4] See also United States v. Davis, 689 F.3d 349, 357-58 (4th Cir.2012) (reciting Begay’s “purposeful, violent, and aggressive” language, but analyzing the statute based on the “dispositive question”: “whether such conduct presents a serious potential risk of physical injury to another”).
In other post-Sykes residual clause cases, this Court has sidestepped the “similar in kind” test altogether. For example, in United States v. Hudson, our analysis revolved only around the “degree of risk” approach without any consideration of the “similar in kind” or “purposeful, violent, and aggressive” tests. 673 F.3d 263, 266-69 (4th Cir.2012). See also United States v. Tillery, 702 F.3d 170, 176-77 (4th Cir.2012) (holding that the inherent risk of physical injury that results from eluding police in a motor vehicle renders it a crime of violence, without any mention of Begay). There appears to be only one reported post-Si/Aes case in which this circuit employed both the “degree of risk” and “similar in kind” analyses, and that case supports the conclusion that crimes requiring knowledge (as § 6-205(a) does) are “purposeful” under Begay. See United States v. Mobley, 687 F.3d 625, 631 (4th Cir.2012).
Ultimately, as Judge Wilkinson stated in United States v. Vann: “Sykes clarifies that the risk of physical harm need not necessarily arise from ‘purposeful, violent, and aggressive’ conduct to qualify as an ACCA predicate.” 660 F.3d 771, 804 (4th Cir.2011) (en banc) (Wilkinson, J., concurring). The mention of the Begay test in some of our post-Sykes decisions need not be taken as an indication that we have continued to apply the “similar in kind” requirement to all residual clause cases. Rather, while we recognize the continued relevance of Begay in some cases, we have not required that crimes of violence be “purposeful, violent, and aggressive” outside the context of strict liability, negligence, and recklessness offenses.[5] Re- *499 cause Martin’s Maryland conviction for fourth degree burglary requires a mens rea of knowledge, the Begay test does not apply and the degree of risk analysis, as it was in Sykes, is sufficient to resolve this case. However, even if Begay did apply to this statute, our precedents compel the conclusion that breaking and entering a dwelling is typically “purposeful, violent, and aggressive,” and therefore is similar in kind to the offenses enumerated in § 4B1.2(a)(2).
III.
Although there is no specific intent requirement in § 6-205(a), Maryland fourth degree burglary is a malum in se crime that does require general criminal intent. Green v. State, 119 Md.App. 547, 705 A.2d 133, 138 (1998). Specifically, Maryland courts have made clear that commission of fourth degree burglary under § 6-205(a) requires knowing unprivileged entry into the dwelling of another. One is therefore not culpable under the statute without “an awareness that [the entry] was unwarranted-lacking authority, license, privilege, invitation, or legality.” Warfield v. State, 315 Md. 474, 554 A.2d 1238, 1251 (1989). It is not enough that a defendant intentionally breaks into another’s dwelling; he must also be “aware of the fact that he is making an unwarranted intrusion.” Id. at 1250. The Warfield court’s approving citation to the Model Penal Code confirms that the mens rea required for commission of § 6-205(a) is “knowledge.” Id. (clarifying that the knowledge requirement is designed “to exclude from criminal liability both the inadvertent trespasser and the trespasser who believes that he has received an express or implied permission to enter”) (quoting 2 Model Penal Code & Commentaries § 221.2, Comment 2(a), at 88 (1980)) (emphasis added).
In Herd v. State, the Maryland Court of Special Appeals drove home the statute’s knowledge requirement. 125 Md.App. 77, 724 A.2d 693 (1999). After considering Warfield and Green, the court emphasized that although fourth degree burglary is a general intent crime, “the mens rea must, indeed, be criminal.” Id. at 700. Without a knowledge requirement, the statute would “ensnare with undiscriminating tentacles all sorts of actors whom the Legislature never intended to treat as criminal.” Id. at 701. It is therefore clear that § 6-205(a) does not criminalize accidental or negligent acts, and is readily distinguishable from statutes that our circuit has described as “explicitly criminalizing a broad swath of unintentional conduct.”[6]
Because breaking and entering under § 6-205(a) must be knowing, the Maryland courts have recognized that “a reasonable belief that the trespass is authorized, licensed, or privileged is a complete defense to the crime.” Herd, 724 A.2d at 701. See also Green, 705 A.2d at 139. Although the Chief Judge rightly notes that a reasonable mistake is a defense to § 6-205(a), it does not necessarily follow that the presence of such a defense (and conversely, the absence of a defense when a mistake is unreasonable) renders § 6-205(a) a mere negligence crime.
In the criminal law, it is generally the ease that an honest and reasonable mistake of fact is a defense to a general intent crime when it negates the mens rea required for the offense. Warfield, 554 A.2d at 1252; 21 Am.Jur.2d Criminal Law § 153. On the other hand, an honest but unreasonable mistake is often not a de *500 fense, or is only a defense to a specific intent crime. Id.[7] But a refusal to recognize unreasonable mistakes as exculpatory does not effectively reduce the mens rea of any general intent crime to “negligence.” Indeed, the Green court saw no conflict between careful adherence to “the knowledge requirement” and excusal only of “the inadvertent trespasser and the trespasser who entertains a reasonable belief that his conduct was proper.” 705 A.2d at 139 (emphasis added). As with other statutes requiring knowledge, the mens rea persists despite the fact that a mistake with respect to the circumstances surrounding the crime may not be exculpatory unless it was made reasonably.
Residual clause cases from the Supreme Court and from this circuit confirm that the existence of only a reasonable mistake defense does not compel the conclusion that crimes requiring “knowledge” should be treated as negligence crimes. Perhaps the best example is Sykes itself. The Indiana vehicular flight statute the Court considered in Sykes, Ind.Code § 35-44-3-3[8], provided that a person may not “knowingly or intentionally” flee from a law enforcement officer in a vehicle after the officer has identified himself and ordered the person to stop. As the crime, on its face, could be committed either knowingly or intentionally, the Court specifically noted that Indiana courts have interpreted § 35-44-3-3 to require a mens rea of knowledge. 131 S.Ct. 2267, 2271 (2011) (citing Woodward v. State, 770 N.E.2d 897, 900-01 (Ind.Ct.App.2002)).
Importantly, Indiana had codified in its criminal law a general defense based on mistake-specifically, “[i]t is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense.” Ind.Code § 35-41-3-7. It is therefore clear that while violation of the statute at issue in Sykes required knowledge, an honest but unreasonable mistake of fact would not have been exculpatory. The Supreme Court nonetheless found that because the statute had “a stringent mens rea requirement,” its violation was predicated on purposeful conduct and the degree of risk analysis was sufficient. 131 S.Ct. at 2275.
The Fourth Circuit reached the same result in one of our most recent residual clause cases. In United States v. Tillery, this Court held that eluding police in a vehicle was a crime of violence under the Guidelines. 702 F.3d 170. Under the Virginia statute at issue, it is a violation of the law for a person, having received a visible or audible signal to stop from a law enforcement officer, to drive in willful and wanton disregard of such signal or to attempt to elude law enforcement by any other means. Va.Code Ann. § 46.2-817(A). The statute specifically provides that it is “an affirmative defense ... if the defendant shows he reasonably believed he was being pursued by a person other than a law-enforcement officer.” Id. (emphasis added). Despite the absence of a defense for unreasonable mistakes, this Court used the degree of risk analysis and held that eluding police was a crime of violence. 702 F.3d at 176-77.
*501 Although any of the above crimes (vehicular flight, eluding police, and breaking and entering under § 6 — 205(a)) could technically be committed despite a negligent mistake, our precedents demonstrate that the existence of a defense only for reasonable mistakes does not undermine the mens rea required to commit the underlying crimes. It follows that because Maryland’s fourth degree burglary is a knowledge crime, the Begay test is unnecessary and the degree of risk analysis is disposi-tive. However, even if Begay’s “similar in kind” analysis were applied in this case, § 6-205(a) is a crime of violence because it typically requires a knowing, affirmative criminal act.
Despite Begay’s use of the word “purposeful,” the “similar in kind” analysis does not require that all crimes of violence have a mens rea of “intent” or “purpose.”[9] As noted above, in this Court’s only true application of Begay since Sykes, we specifically found that possession of a shank in prison was a crime of violence because it required “proof that the inmate knowingly possessed the prohibited object,” and therefore involved “ ‘purposeful’ conduct.” United States v. Mobley, 687 F.3d 625, 631 (4th Cir.2012). Thus, even under Begay, we have held that crimes requiring a mens rea of “knowledge” are “purposeful” (and for the reasons above, the existence of a reasonable mistake of fact defense does not alter this result).
Finally, it must be remembered that in determining whether a statute is a “crime of violence” under either James, Begay, or Sykes, we are required to look to the manner in which the crime is typically committed. In James, the Supreme Court stressed that while one could “imagine a situation in which attempted burglary might not pose a realistic risk,” the ACCA is based on “probabilistic concepts” and “does not require metaphysical certainty.” 550 U.S. 192, 207-08, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). See also United States v. Carthorne, 726 F.3d 503, 507 (4th Cir.2013) (examining the risk of injury “in the usual case”); United States v. Foster, 674 F.3d 391, 394-95 (4th Cir.2012) (Wilkinson, J., concurring in the denial of rehearing en banc) (explaining that to “hypothesize unusual cases” is “at odds with the simple common sense on which the Supreme Court has relied in ACCA cases”). Most importantly, Begay itself only requires that a crime of violence “typically involve purposeful, ‘violent,’ and ‘aggressive’ conduct”; there has never been a need to demonstrate that those factors are present in every conceivable case.[10] The majority correctly notes that in a technical sense, because an unreasonable mistake of fact is not a defense, violation of § 6-205(a) “does not always” involve purposeful conduct and “may be based on” negligent or reckless conduct. But I submit that while breaking and entering a dwelling might, in some rare cases, be commit *502 ted with a lower level of culpability, the manner in which it is typically committed renders it a “crime of violence” under the Guidelines.
IV.
As Judge Diaz observed, the proper reach of § 4B1.2’s residual clause (and the residual clause of the ACCA) is not a model of clarity. In light of the divergent conclusions being reached by the courts of appeals (and the frequency with which the residual clause is applied), it is evident that further guidance from Congress or the Court is necessary. My fellow panelists and I are in agreement that because Maryland fourth degree burglary requires knowingly breaking and entering the dwelling of another, it creates a high risk of confrontation and therefore poses the same level of risk as generic burglary. In my view, we need not look further. But even under Begay’s “similar in kind” test, I believe our precedents compel the result that Maryland fourth degree burglary is a “crime of violence.” Therefore, I respectfully dissent and would affirm the sentence imposed by the district court.

. The Supreme Court will have an opportunity to address the status of Begay next term in United States v. Johnson, 526 Fed.Appx. 708 (8th Cir.2013), in which certiorari was recently granted on the issue of whether possession of a short-barreled shotgun is a violent felony under the ACCA.

. As the Chief Judge notes, the definition of “crime of violence” in this circuit is informed interchangeably by cases decided under the Guidelines (U.S.S.G. § 4B 1.2(a)(2)) and under nearly identical language in the Armed Career Criminal Act (18 U.S.C. § 924(e)). See United States v. Mobley, 687 F.3d 625, 628 n. 3 (4th Cir.2012), cert. denied, - U.S. -, 133 S.Ct. 888, 184 L.Ed.2d 690 (2013).

. However, even if Begay survived Sykes in its entirety and continues to apply in all residual clause cases in this circuit, I would still find that under Supreme Court and Fourth Circuit precedent, Maryland fourth degree burglary of a dwelling is "purposeful, violent, and aggressive” and therefore a “crime of violence” under Begay’s “similar in kind” analysis. See infra Part III.

. After resolving the case exclusively under the "degree of risk” analysis, the Court referred briefly to the "purposeful, violent, and aggressive” test only to observe that it would have reached the same conclusion under that standard. 726 F.3d at 515 n. 12. The only case the Carthorne Court cited for the application of the Begay test in our circuit was United States v. Thornton, a pre-Sykes case in which we applied Begay’s reasoning to the strict liability offense of statutory rape. 554 F.3d 443, 448 (4th Cir.2009).

. As we have focused almost exclusively on the "degree of risk” test in post-Sykes cases, it is unclear whether Begay's "similar in kind” requirement truly survives Sykes at all in this circuit. However, for purposes of this case I assume that in analyzing a strict liability, negligence, or recklessness offense, this circuit would require that the statute “typically in *499 volve purposeful, violent, and aggressive conduct” as set forth in Begay.

. United States v. Rivers, 595 F.3d 558, 565 (4th Cir.2010) (holding that South Carolina's blue light statute was not a crime of violence under Begay).

. It should be noted that there is significant debate over whether "unreasonable” mistakes should be further classified as either "negligent” or "reckless” in order to determine whether they provide a defense to a given crime. See generally 1 Crim. L. Def. § 62 (2013). Because mistakes under § 6-205(a) (and under the other statutes discussed infra) are only referred to as "reasonable” or not, this discussion (though it raises an interesting issue) does not affect the outcome in the present case.

. Since repealed and replaced by the substantively identical § 35-44.1-3-1.

. The Court’s general use of the word "purposeful” in Begay necessarily created confusion with “purposeful” as used as a level of culpability in the Model Penal Code. On its own terms and as interpreted by this circuit, Begay does not require that all crimes of violence have a mens rea of "intent.” Rather, "purposeful” as used in Begay distinguished crimes whose risk of harm stems from active, criminal conduct from those in which negligent, accidental, or even faultless conduct typically creates the risk of harm.

. If there is any doubt that a conviction under § 6-205(a) rarely results from negligent conduct, the language of the Maryland courts is instructive. In Herd v. State, the Maryland Court of Special Appeals referred to the mistake defense in fourth degree burglary cases as “relatively rare and essentially esoteric.” 125 Md.App. 77, 724 A.2d 693, 704 (1999). In explaining the burden of proof, the court went on to describe such defenses as “arcane” and “arisfing] only on rare occasions.” Id. at 703.